# DEFENDANT INFORMATION RELATIVE TO A CRIMINAL ACTION - IN U.S. DISTRICT COURT

BY: [X] COMPLAINT  [ ] INFORMATION  [ ] INDICTMENT  [ ] SUPERSEDING

**Name of District Court, and/or Judge/Magistrate Location**
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

## OFFENSE CHARGED

18 U.S.C. § 111(b) – Assault on a Federal Officer or Employee with a Deadly or Dangerous Weapon

[ ] Petty
[ ] Minor
[ ] Misdemeanor
[X] Felony

PENALTY:
Maximum 20 years imprisonment
Maximum 3 years supervised release
Maximum $250,000 fine
$100 special assessment
Forfeiture

### DEFENDANT - U.S

Brendan Munro Thompson aka Bella Castillo aka Bella Thompson

DISTRICT COURT NUMBER
4:25-mj-71288 MAG

## PROCEEDING

Name of Complaintant Agency, or Person (& Title, if any)
Federal Bureau of Investigation

[X] person is awaiting trial in another Federal or State Court, give name of court
Alameda County

[ ] this person/proceeding is transferred from another district per (circle one) FRCrp 20, 21, or 40. Show District

[ ] this is a reprosecution of charges previously dismissed which were dismissed on motion of:
[ ] U.S. ATTORNEY  [ ] DEFENSE

SHOW DOCKET NO.

[ ] this prosecution relates to a pending case involving this same defendant

MAGISTRATE CASE NO.

[ ] prior proceedings or appearance(s) before U.S. Magistrate regarding this defendant were recorded under

Name and Office of Person Furnishing Information on this form    Craig H. Missakian
[X] U.S. Attorney  [ ] Other U.S. Agency

Name of Assistant U.S. Attorney (if assigned)    Jonah P. Ross

## DEFENDANT

**IS NOT IN CUSTODY**
Has not been arrested, pending outcome this proceeding.
1) [ ] If not detained give date any prior summons was served on above charges
2) [ ] Is a Fugitive
3) [ ] Is on Bail or Release from (show District)

**IS IN CUSTODY**
4) [ ] On this charge
5) [ ] On another conviction    [ ] Federal  [ ] State
6) [X] Awaiting trial on other charges
If answer to (6) is "Yes", show name of institution
Santa Rita Jail or John George Psychiatric Hospital

Has detainer been filed?  [ ] Yes  [ ] No    If "Yes" give date filed

DATE OF ARREST    Month/Day/Year

Or... if Arresting Agency & Warrant were not
DATE TRANSFERRED TO U.S. CUSTODY    Month/Day/Year

FILED
Oct 30 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

[ ] This report amends AO 257 previously submitted

## ADDITIONAL INFORMATION OR COMMENTS

PROCESS:
[ ] SUMMONS  [ ] NO PROCESS*  [X] WARRANT    Bail Amount: no bail

If Summons, complete following:
[ ] Arraignment  [ ] Initial Appearance
Defendant Address:

* Where defendant previously apprehended on complaint, no new summons or warrant needed, since Magistrate has scheduled arraignment

Date/Time:    Before Judge:

Comments:

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) |
|---|---|
| v. | ) |
| Brendan Munro Thompson aka Bella Castillo | ) Case No. 4:25-mj-71288 MAG |
| | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  October 29, 2025  in the county of  Alameda  in the Northern District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 111(b) | Assault on a federal officer with a deadly or dangerous weapon. |

This criminal complaint is based on these facts:
See attached affidavit of FBI Special Agent Mikael Bergh.

**FILED**
Oct 30 2025
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

☑ Continued on the attached sheet.

Approved as to form: /s/ Jonah Ross
AUSA Jonah Ross

/s/ Mikael Bergh
*Complainant's signature*

Mikael Bergh, FBI Special Agent
*Printed name and title*

Sworn to before me by telephone.

Date: 10/29/2025

*Judge's signature*

City and state: Oakland, CA

Hon. Donna Ryu, Chief Magistrate Judge
*Printed name and title*

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR
CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Mikael Bergh, a Special Agent of the Federal Bureau of Investigation (FBI), being duly sworn, hereby declare as follows:

**INTRODUCTION**

1.      I make this affidavit in support of an application under Rule 4 of the Federal Rules of Criminal Procedure for a criminal complaint and arrest warrant authorizing the arrest of Brendan Munro Thompson ("THOMPSON"), also known as Bella Thompson and Bella Castillo, for assault on a federal officer with a deadly or dangerous weapon, in violation of Title 18, United States Code, Section 111(b), on or about October 23, 2025, in the Northern District of California.

**SOURCES OF INFORMATION**

2.      This affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant. I have not included every fact known to me concerning this investigation. Instead, I have set forth only the facts necessary to establish probable cause that a violation of the federal law identified above has occurred. Further, my understanding of the significance of certain events and facts may change as the investigation progresses.

3.      The information in this affidavit, including the opinions which I have formed and statements set forth herein, is based upon my training and experience in the field of violent crimes, firearms and illegal narcotics investigations, personal participation during the course of this investigation, knowledge obtained from investigative reports, reliable sources of information relevant to this investigation, consultation with other experienced local and federal law enforcement officials, and upon my examination and review of various reports and other records. Unless otherwise noted, when I assert that a statement was made, I have either heard the statement directly or listened to a recording of the statement, or the statement was reported to me by another law enforcement officer, either directly or indirectly in a written report. The officer

providing me with the information may have received the information by way of personal knowledge or from another source.

## AFFIANT BACKGROUND

4. I have been employed as a Special Agent of the FBI for approximately 22 years. I am currently assigned to the San Francisco Division, Oakland Resident Agency. My investigative responsibilities include violent crimes, which includes commercial robberies, illicit firearms possession, and assault with a deadly weapon on a federal officer or employee. I received training at the FBI Academy in Quantico, Virginia, including training on criminal procedure, search and seizure, and violent crimes. During the course of my career with the FBI, I have participated in numerous investigations involving violent and weapons-related crimes, and in the execution of numerous search and arrest warrants relating to such investigations.

5. As an FBI agent, I am authorized to investigate violations of federal law and am a law enforcement officer with the authority to execute warrants issued under the authority of the United States. I am an investigator and law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of federal law, including offenses enumerated in Title 18, United States Code, Section 111(b).

## APPLICABLE LAW

6. The elements of Title 18, United States Code, Section 111(b) are as follows: (1) the defendant forcibly assault a federal officer or employee; (2) the defendant did so while the federal officer or employee was engaged in, or on account of the federal officer's or employee's official duties; and (3) the defendant used a deadly or dangerous weapon. A forcible assault occurs when one person intentionally strikes another, or willfully attempts to inflict injury on another, or intentionally threatens another coupled with an apparent ability to inflict injury on another which causes a reasonable apprehension of immediate bodily harm. An automobile is a deadly or dangerous weapon if it is used in a way that is capable of causing death or serious bodily injury.

**FACTS SUPPORTING PROBABLE CAUSE**

7.      On or about the night of October 23, 2025, several United States Coast Guard (USCG) personnel were assigned force protection duties to stand guard on the bridge connecting Coast Guard Island with Oakland, California.  As USCG personnel, each was an officer or employee of the United States.  Coast Guard Island is a small island on an estuary separating Alameda and Oakland, and it is the location of Coast Guard Base Alameda.  The entire island is federal property.  Coast Guard Base Alameda can be accessed only via the bridge connecting the island with Oakland or via a waterborne craft.  A painted line demarks the beginning of federal property at the eastern (Oakland) end of the bridge to Coast Guard Island.  See a map of the Coast Guard Island below:



8.      At the time, a few dozen demonstrators had congregated near the eastern end of the bridge connecting Coast Guard Island with Oakland to protest the deployment of United

States Department of Homeland Security personnel to conduct enforcement of U.S. immigration law in San Francisco.

9. Shortly before 10:00 p.m. that night, a person, later identified as THOMPSON, drove a U-Haul truck onto the eastern part of the bridge leading to Coast Guard Island. The incident was contemporaneously recorded on video by bystanders at the scene. The U-Haul truck appeared to be an approximately 10-foot-long box truck. The video indicated there was a sole occupant in the driver's seat and no other person in the passenger area. As depicted on video recordings and as confirmed in subsequent interviews with the USCG personnel who were then guarding the bridge, the U-Haul backed onto the bridge, with its rear end facing toward Coast Guard Island. Several USCG personnel were positioned in a line across the bridge. As the U-Haul truck reversed toward the USCG personnel, they backed away from the U-Haul truck toward a USCG law enforcement vehicle parked on the bridge in the lane leading to Oakland from Coast Guard Island. A movable concrete barrier was stationed in the inbound lane from Oakland toward Coast Guard Island. After reversing toward the USCG personnel, the U-Haul truck moved forward several yards and appeared to adjust course before stopping again. The U-Haul truck then accelerated rapidly backward towards the line of USCG personnel, who backed up further as the U-Haul gained speed and continued to close the distance with them. Several USCG personnel appeared to be in the direct path of the U-Haul truck as it approached. As the U-Haul truck approached the USGC personnel, the truck's engine revved loudly as it accelerated, and the USCG personnel—who were unable to determine the number of people in the truck—shouted orders to the driver to stop. When the driver did not obey the orders to stop and continued to accelerate backward and to rapidly approach the line of USCG personnel, the personnel defensively fired their weapons at the U-Haul truck.

10. Several USCG personnel who were on the bridge subsequently stated that they feared for their lives as the U-Haul accelerated toward them, and they could not determine the number of people in the vehicle or if anyone was in the cargo area. They feared that the truck—which continued to accelerate and to close the distance with the USGC personnel to an estimated

4

15 to 20 feet—would strike them or their colleagues, and some feared the possibility that the truck was a vehicle borne Improvised Explosive Device, or that additional people possibly concealed in the cargo area of the truck would open the roll-up rear cargo door and open fire on them. Not all of the USCG personnel noted the same reasons for being in fear for their lives, but all stated at least one of the above listed reasons. This fear for their lives, and the lives of their USCG colleagues, led them to open fire on the U-Haul truck to stop the threat.

11. The following images shows the U-Haul truck as it approached the USCG personnel, just before the sound of gunfire. The videos indicate that several USCG personnel were positioned in the direct path of the U-Haul truck:





12.     The U-Haul truck did not make physical contact with any of the USGC personnel. After the gunfire, the U-Haul truck stopped and rapidly accelerated forward, away from the USCG personnel, before stopping again at the Oakland end of the bridge. The U-Haul sat still for a few seconds, and—as depicted in the image below—video footage showed the driver wearing a green baseball hat and a white face mask with no visible passenger in the vehicle.



13.     The driver drove eastbound on Dennison Street in Oakland and stopped shortly thereafter in the middle of the street. The video indicates the U-Haul truck's license plate number was AM69058, although the issuing state cannot be determined from the video. The U-Haul then made a U-turn on Dennison Street to face westbound prior to the video ending.

14.     Additional surveillance video showed the U-Haul come to a stop near the entrance to the bridge on Dennison Street at 9:54 p.m., according to the timestamp on the video. Within approximately one minute, a dark sedan approached and stopped on the driver's side of the U-Haul truck. A person exited the passenger side of the sedan, and immediately after, a person

6

appeared to exit the driver's door of the U-Haul truck. Both subjects then entered the sedan, which made a U-turn and drove away.

15. The U-Haul truck was recovered by law enforcement parked in this same position on Dennison Street. The truck was unoccupied at time of recovery, and what appeared to be multiple bullet holes were visible in the rear panel. The license plate of the U-Haul was Arizona license plate AM69058, which U-Haul records confirm was rented at the time to THOMPSON.

16. Video of the interior of the U-Haul after it was parked on Dennison Street showed what appeared to be multiple bullet holes in the cabin of the U-Haul, including one visible through the upper portion of the back of the driver's seat. The following image shows the driver's seat as recorded on video following the shooting:



17. Videos subsequently posted to social media showed the driver of the U-Haul arrive (prior to the incident) at the protest outside the bridge leading to Coast Guard Island. The driver parked the U-Haul truck perpendicular to the entry to the bridge, which was then blocked by garbage dumpsters, which were subsequently moved by suspected protestors to permit the U-Haul truck to enter the bridge. The driver exited the U-Haul truck and entered the crowd of

7

protesters. After approximately 5 minutes, the driver returned to the vehicle and re-entered the driver's seat of the U-Haul truck. The U-Haul truck then pulled away and began to back up toward the bridge to Coast Guard Island, just prior to the shooting described in previous paragraphs. In the video, and as shown in the image below, the driver appeared to be wearing a green baseball cap, a white face mask, a dark jacket, a dark backpack, and distinctive multicolor pants.



18. At approximately 10:08 p.m. on October 23, 2025, THOMPSON was admitted to Highland Hospital in Oakland with a gunshot wound to the back, after being transported by a third party. Oakland Police Department officers investigating the shooting identified THOMPSON shortly thereafter by locating THOMPSON's California Driver's License among THOMPSON's clothing and possessions collected by Highland Hospital upon admission to the hospital. Alameda Police Department (APD) officers responded to Highland Hospital and detained THOMPSON as a suspect in the shooting at Coast Guard Island. The APD officer who guarded THOMPSON at Highland Hospital informed me that THOMPSON identified as transgender, and goes by the name "Bella." At Highland Hospital, APD officers recovered distinctive multicolor pants from the belongings and clothing that was taken from THOMPSON. THOMPSON was subsequently admitted to a psychiatric hospital. The pants, which are shown in the image below, appear consistent with the pants worn by the driver of the U-Haul truck:



19.     Photographs from Highland Hospital indicate that THOMPSON suffered a gunshot wound between the shoulder blades, which is consistent with the location of the apparent bullet hole in the upper portion of the U-Haul truck's driver's seat.

## CONCLUSION

20.     Based on the information set forth in the paragraphs above, I submit that there is probable cause to conclude that, on or about October 23, 2025, in the Northern District of California, THOMPSON committed the crime of assault with a deadly or dangerous weapon on a federal officer or employee, in violation of Title 18, United States Code, Section 111(b).

*/s/ Mikael Bergh*
MIKAEL BERGH
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me by telephone in accordance with the requirements of Fed. R. Crim. P. 4.1 and 4(d) on this 29th day of October 2025.

HONORABLE DONNA M. RYU
Chief Magistrate Judge