| | |
|---|---|
| 1 | JODI LINKER, Bar No. 230273 |
| 2 | Federal Public Defender<br>Northern District of California |
| 3 | ELISSE LAROUCHE, Bar No. 308533<br>KAITLYN FRYZEK, Bar No. 340229 |
| 4 | Assistant Federal Public Defender<br>13th Floor Federal Building - Suite 1350N |
| 5 | 1301 Clay Street<br>Oakland, CA 94612 |
| 6 | Telephone:   (510) 637-3500 |
| 7 | Facsimile:    (510) 637-3507<br>Email:          Elisse_Larouche@fd.org |
| 8 | Email:          Kaitlyn_Fryzek@fd.org |
| 9 | Counsel for Defendant Thompson |

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>BRENDAN (BELLA) THOMPSON,<br><br>  Defendant. | Case No.: MAG-25–71288 PCP<br><br>**DEFENSE RESPONSE TO GOVERNMENT'S MOTION TO STAY RELEASE** |

Pursuant to the Court's order (Dkt. 19), the defense submits this response in opposition to the government's motion to stay Magistrate Judge Westmore's release order for defendant Brendan aka Bella Thompson (Dkt. 18).

Although this Court issued a stay of Ms. Thompson's release (Dkt. 19), defense counsel learned this morning that Ms. Thompson was released from the jail around 2:30 a.m. on November 21, 2025. Ms. Thompson's parents picked her up from the jail this morning and stayed with Ms. Thompson overnight. Counsel for the government, the United States Marshals Service, and Pretrial Services have been notified of Ms. Thompson's release. Pretrial Services has indicated to defense counsel that they do not need Ms. Thompson to report to them at this time. Defense counsel has

advised Ms. Thompson to come to the federal building in Oakland and to await further direction of this Court with defense counsel.

As to the government's motion to stay Ms. Thompson's release, counsel highlights the following procedural history. An initial detention hearing was held on November 14, 2025, during which the parties presented argument, pretrial services recommended release, and Magistrate Judge Westmore articulated the additional information she would need to see in order to release Ms. Thompson. On November 20, 2025, at the second and continued bail hearing for Ms. Thompson, Magistrate Judge Westmore issued a release order that provided stringent conditions to reasonably assure the safety of the community and Ms. Thompson's appearance at future court hearings.

Ms. Thompson is 26 years old and has no criminal history, not even a prior arrest. Her parents were present at both detention hearings. They both signed as custodians on a $50,000 unsecured bond and, after questioning by Judge Westmore, indicated they understood their roles as custodians and sureties. The bond conditions require Ms. Thompson to reside with her parents in Southern California. They also require her to participate in a specific mental health treatment program beginning November 24, 2025, which her parents paid for and obtained insurance for, the details of which were provided to Magistrate Judge Westmore. The program meets five days per week, for five hours per day. In addition, argument and documentation were presented to Magistrate Judge Westmore regarding the details of Ms. Thompson's mental health situation, medications, and her stabilization since the charged offense. For its part, the government presented argument regarding the charged offense and Ms. Thompson's alleged attempt to flee from officers when she was hospitalized after the charged incident. The pretrial services report recommended release. This is not a case in which there is a presumption of detention.

After considering argument from both sides, reviewing documentation provided by the defense regarding mental health services and the pretrial services report, and speaking to Ms. Thompson's parents regarding their roles as custodians and sureties, Magistrate Judge Westmore issued a release order with conditions that, as required by the Bail Reform Act ("BRA"), *reasonably assured* the Court of the public's safety and Ms. Thompson's future appearance at court hearings. 18 U.S.C. § 3142(e). The conditions imposed by Magistrate Judge Westmore are appropriate. The government's

request for a stay is not, given the facts of this case.

The government's request for a stay from the district court during the pendency of its motion for revocation is not supported by the legal authority and guiding factors it cites in *Nken v. Holder*, 556 U.S. 418, 434 (2009). Rather, the traditional test for a stay strongly weighs in favor of this Court denying any further stay.

First, the government has not cited any authority or provided sufficient facts to show they have made a *strong* showing that they are likely to succeed on the merits. *See id*. The government has recited the circumstances of the alleged offense. But the weight of the evidence is the least important factor in considering release because the court cannot make a pretrial determination of guilt. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985). This is especially so where the government's arguments of Ms. Thompson's alleged intent have not been tested or litigated. The government also contends that the mental health treatment condition and plan are "insufficient to ensure the safety of the community," but provides no further explanation in support of its argument. Judge Westmore clearly found to the contrary and was satisfied by the information regarding the specific treatment plan and program presented by defense. The government also did not articulate why the release conditions, taken together, are insufficient to reasonably assure the safety of the community for a defendant *who has no criminal history and has shown stabilization*. The government also does not argue how it would succeed in arguing that Ms. Thompson is a flight risk. She has no criminal history, no history of failures to appear, has always lived in the state of California, and is ordered to reside with her parents as custodians and sureties. The facts here do not support that the government has made a showing that it is likely to succeed on the merits of revocation of release, let alone a *strong* showing. *See id*.

Second, the applicant, here the government, will not be irreparably injured absent a stay because it is still able to move for revocation of the release order. The motion for revocation can be addressed promptly while Ms. Thompson is released on bail. The government cites its concern for danger to the public in the interim, but again, as Judge Westmore emphasized, Ms. Thompson has *no criminal history*. She will also be subject to stringent conditions on release while under the watchful eyes of her parents in their home.

Third, the issuance of the stay will substantially injure Ms. Thompson. Additional time in custody substantially injures Ms. Thompson's liberty interests. Continued incarceration also causes potential harm to her mental health as she is in an anxiety-inducing, carceral setting with which she has no prior experience. Her mental health is subject to deterioration in these circumstances. Further, Ms. Thompson is set to begin her mental health program on Monday, November 24, 2025. Any delay of her release could delay her treatment plan.

Fourth, the public interest lies in following the clear edict of the BRA, not the government's position unsupported by legal authority. The presumption of the BRA is release on personal recognizance. 18 U.S.C. § 3142(b) (The judge "shall order the pretrial release . . . ."); *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). Where conditions of release are necessary, the BRA contains a "least restrictive conditions" requirement to "reasonably assure" a defendant's appearance and the community's safety. § 3142(c)(1), (e)(1). This is not a presumptive detention case – it is a presumptive release case. There are conditions that can be imposed and the safety of the public and Ms. Thompson's future appearance is reasonably assured by such conditions.

Again, the government can still move to revoke the release order and those proceedings can occur while Ms. Thompson is on bond. Put another way: when the defense moves to revoke a detention order, the defense does not also ask for a "stay" of that detention order, because there is no basis to do so.

The district court in *United States v. Hudspeth* recognized this logic in the context of a motion to review a release order in a criminal case, noting:
> The court appreciates that the requirement for a motion to be filed when the Government seeks review of a Magistrate Judge's release order may mean that an accused will be released pending a resolution of the Government's request for review. Such an outcome does not warrant disregarding the plain requirements of the governing law, however. In this regard, it is useful to consider that it has never been questioned that in order for a defendant to have a District Judge review a Magistrate Judge's pretrial detention order he must file a written motion. Nor has there been any question of the appropriateness of the accused remaining detained until there is a resolution of the defendant's motion. This court is unaware of any legal principle or logic that accords the Government's position regarding whether a defendant should be released pending trial a standing superior to that of the defendant such that the Government's position, as a matter of course, is effectively adopted—albeit temporarily—even after a judicial officer has ruled otherwise.

143 F. Supp. 2d 32, 35 (D.D.C. 2001).

There is no legal basis to effectively overturn the magistrate court's order while the appeal is pending. *See also United States v. Martinez Santoyo*, 2022 WL 16856256 (E.D. Cal. November 10, 2022) (denying the government's request for a stay of a release order); *United States v. Brugnoli-Baskin*, 2022 WL 14664742 (W.D. Wash. October 24, 2022) (court reconsidered its grant of a government-requested stay because conditions had appropriately been set to avoid risk to the community while the court considered the government's appeal of the release order). The government's disagreement with Magistrate Judge Westmore's well-reasoned and considered release order does not equate to a legal basis for a stay of the order in the interim. The standard they have cited for their request for the stay weighs on the side of the defense and Magistrate Judge Westmore's order, not the government. The district court has the ability to hear any motion for revocation of release, with certainty, after Ms. Thompson is released.

For these reasons, the Court should deny the government's motion for any further stay of the release order.

Dated:    November 21, 2025            Respectfully submitted,

JODI LINKER
Federal Public Defender
Northern District of California

           /S
ELISSE LAROUCHE
KAITLYN FRYZEK
Assistant Federal Public Defenders