CRAIG H. MISSAKIAN (CABN 125202)
Acting United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JONAH P. ROSS (CABN 305076)
Assistant United States Attorneys

   1301 Clay Street, Suite 340S
   Oakland, CA 94612
   Telephone: (510) 637-3680
   Fax: (510) 637-3724
   jonah.ross@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 4:25-MJ-71288 MAG |
|    Plaintiff, | **UNITED STATES' MEMORANDUM IN SUPPORT OF APPEAL OF RELEASE ORDER** |
| v. | |
| BRENDAN MUNRO THOMPSON AKA BELLA THOMPSON, | |
|    Defendant. | |

GOVT'S MOTION TO REVOKE RELEASE
4:25-MJ-71288 MAG

## I. INTRODUCTION

The United States respectfully requests that the Court reverse the order of release of Defendant Brendon Muno Thompson, a/k/a Bella Thompson by the Magistrate Judge. During an otherwise peaceful protest on the night of October 23, 2205, the Defendant deliberately drove a U-Haul box truck at a line of armed United States Coast Guard personnel as they shouted orders for Thompson to stop. *See* Dkt. 1 (Complaint). After the Coast Guard personnel—who feared for their lives—fired shots at the rear of the U-Haul truck, Thompson sped away and was eventually taken to the hospital for treatment of a bullet wound to the back. After being detained at the hospital, Thompson attempted to escape, running away from multiple law enforcement officers. The officers eventually regained control of Thompson and handcuffed her to a gurney.

Thompson appeared on November 14 and November 20, 2025 for detention hearings before the Honorable U.S. Magistrate Judge Kandis A. Westmore, who released the defendant into the custody of defendant's parents, with whom the defendant is ordered to reside, and ordered the defendant to attend a mental health program for five hours a day, five days a week.

Defendant Thompson engaged in an unprovoked and potentially deadly attack on federal officers, put bystanders at risk, and then subsequently attempted to escape from custody. The release conditions imposed by the Magistrate do not sufficiently assure that the defendant does not remain a danger to the community and a risk of flight. The defendant's actions – an apparently premediated and potentially violent assault on law enforcement and a subsequent attempt to escape - demonstrate that the defendant presents a clear danger to the community and a risk of flight. The government respectfully asks this Court to reverse the Magistrate's order and order the defendant detained.

## I. BACKGROUND

### a. During an Otherwise Peaceful Protest, Thompson Drove a U-Haul Truck at United States Coast Guard Personnel

On October 29, 2025, Thompson was charged by complaint with one count of assault on a federal officer or employee with a deadly or dangerous weapon. *See* Dkt. 1 (Complaint). Shortly before 10 p.m. on October 23, 2025, several employees of the United States Coast Guard (USCG) were standing guard on the bridge connecting Coast Guard Island with Oakland, California. *Id.* Coast Guard

1  Island is a small island on an estuary separating Alameda and Oakland, and it is the location of Coast
2  Guard Base Alameda. *Id.* The entire island is federal property. Earlier that day, reportedly hundreds of
3  demonstrators had congregated to protest the deployment of United States Department of Homeland
4  Security personnel to conduct enforcement of U.S. immigration law in San Francisco. *Id.* By this time,
5  however, only a few dozen remained, and bystanders reported that the protest was peaceful. *Id.* The
6  USCG personnel had asked the protestors to remain off of the bridge, and the protestors had complied,
7  although some had placed dumpsters along the entrance to the bridge, in an apparent attempt to prevent
8  federal vehicles from entering or leaving the island. *Id.*

At one point, Thompson drove a U-Haul box truck to the bridge entrance, and parked it by the protestors, with the dumpsters blocking the U-Haul's path to Coast Guard Island:



GOVT'S MOTION TO REVOKE RELEASE
4:25-MJ-71288 MAG                                                              2

1   Thompson appeared to exit the vehicle, which remained parked for several minutes. *Id.* After
2   re-entering the U-Haul truck, Thompson then positioned the U-Haul so that it could be backed onto the
3   bridge, and several protestors moved the dumpsters—which had previously blocked the U-Haul from
4   entering the bridge—out of the way:



13   Thompson then drove the U-Haul onto the bridge, and the protestors replaced the dumpsters to
14   once again block traffic. *Id.* After reversing toward the USCG personnel, who drew their firearms, the
15   U-Haul truck moved forward several yards and appeared to adjust course before stopping again. *Id.*
16   The U-Haul truck then accelerated rapidly backward towards the line of USCG personnel, who backed
17   up further as the U-Haul gained speed and continued to close the distance with them. Several USCG
18   personnel appeared to be in the direct path of the U-Haul truck as it approached. As the U-Haul truck
19   approached the USGC personnel, the truck's engine revved loudly as it accelerated, and the USCG
20   personnel—who were unable to determine the contents of or the number of people in the truck—shouted
21   orders to the driver to stop. When the driver did not obey the orders to stop and continued to accelerate
22   backward and to rapidly approach the line of USCG personnel, the personnel defensively fired their
23   weapons at the U-Haul truck.

GOVT'S MOTION TO REVOKE RELEASE
4:25-MJ-71288 MAG                                            3

The following images shows the U-Haul truck as it approached the USCG personnel, just before the sound of gunfire. The videos indicate that several USCG personnel were positioned in the direct path of the U-Haul truck:





After the USCG personnel fired shots at the U-Haul truck, Thompson—who was struck in the back by a bullet—drove away quickly and eventually parked a short distance from the bridge. Thompson was driven to Oakland's Highland Hospital by a third party. A bystander was hit by a bullet fragment and also required medical attention.

Several of the USCG personnel reported that they feared for their lives as the truck approached, believing that the truck would run them over, or that it might contain armed individuals or explosives in the truck's cargo area.

### b. After Being Detained at the Hospital, Thompson Attempted to Flee

After arriving at Highland Hospital, Thompson was tentatively identified as the U-Haul driver by witnesses to the incident and was subsequently detained. While resting and handcuffed to a gurney, Thompson requested to use the bathroom. Officers removed the handcuffs and permitted Thompson to enter the bathroom across the hall. After a few minutes in the bathroom, Thompson exited quickly and attempted to spring away from the officers. The officers grabbed hold of Thompson and attempted to restrain Thompson on the ground. Thompson continued to tense Thompson's body and prevent the officers from applying handcuffs. Eventually, the officers regained control and secured Thompson in handcuffs before returning Thompson to the gurney. Thompson was subsequently transferred to a psychiatric hospital.

### c. Thompson Has Publicly Documented Mental Health Issues

Thompson has publicly acknowledged mental health issues, including on the day of the incident. That day, Thompson reportedly spoke with a Daily Cal reporter, stating, "I skipped my mental health program to be here this morning." *See*, "Individual suffering from 'manic episodes' charged in U-Haul assault on Alameda Coast Guard base," the Daily Californian, available at https://www.dailycal.org/news/alameda-county/individual-suffering-from-manic-episodes-charged-in-u-haul-assault-on-alameda-coast-guard-base/article_2796029a-a183-41ac-b2d1-48af0cbf9b82.html. Thompson was also observed shoving a man to the ground after the man reportedly was alleged to have worked with federal agents. *Id*.

## II. PROCEDURAL HISTORY

On October 23, 2025, defendant Thompson was arrested. On November 14, and November 20, 2025, Thompson appeared before the Magistrate Court for a detention hearing. (Over the government's objection, the first detention hearing was sealed to the public.) On November 20, 2025, the Magistrate Judge ordered Thompson released to the custody of Thompson's parents, who live in Southern California.

GOVT'S MOTION TO REVOKE RELEASE
4:25-MJ-71288 MAG                                          5

Among other conditions, Thompson was also ordered to attend a mental health program that requires attendance Monday through Friday for approximately five hours each day. Dkt. 20. The program is not full inpatient treatment: Thompson is not required to reside at the program.

On November 20, 2025, the Honorable United States District Judge Pitts ordered a temporary stay of Thompson's release. Dkt. 19. Despite this order, Thompson was released from custody in the early morning of November 21, 2025. Dkt. 20. The Court subsequently ordered vacated the temporary stay of release. Dkt. 21.

### III.  LEGAL STANDARD

On appeal of a magistrate judge's release order, this Court "should review the evidence before the magistrate and make its own independent determination whether the magistrate's findings are correct, with no deference." *United States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The record is not limited to those facts that were presented to the magistrate judge; rather, the Court should "make its own 'de novo' determination of the facts," and the "ultimate determination of the propriety of detention is also to be decided without deference to the magistrate's ultimate conclusion." *Id.* at 1193.

This Court can detain a defendant pretrial without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk. *Id.* at § 3412 (b), (c). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. *Id.* at § 3142(f)(2)(B). A finding that a defendant presents a risk of non-appearance must be supported by a preponderance of the evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). The rules concerning admissibility of evidence in criminal trials do not apply to a detention hearing. *See* 18 U.S.C. § 3142(f)(2)(B).

The Court considers four factors to determine whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics, including his character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was

committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## IV. ARGUMENT

### a. The Nature And Circumstances Of The Offense Indicate that Thompsons Presents a Significant a Danger to the Community

In the instant case, in an unprovoked attack, Thompson used a U-Haul box truck as a weapon in a targeted assault on federal officers. The attack was premeditated: Thompson waited for several minutes prior to having other people move the dumpsters blocking the path toward the USCG personnel. Then Thompson deliberately drove a U-Haul truck into a line of Coast Guard personnel. Thompson's conduct – an apparently preplanned and reckless assault on law enforcement – demonstrates the danger Thompson poses to the community. The government cannot overstate the seriousness and gravity of a potentially loaded truck barreling towards a federal law enforcement installation. The Coast Guard Personnel very reasonably feared for their lives and safety.

Thompson was deterred neither by the commands from USCG personnel to stop or by the firearms that they pointed at the truck: Thompson proceeded to drive directly at them despite the risk it posed both to the USCG personnel, to Thompson, and to innocent bystanders, one of whom was struck by a bullet fragment. Thompson repeatedly ignored commands to stop, even when officers drew their weapons. If the threat of firearms pointed at Thompson by federal officers was insufficient deterrence, there is no reason to believe that the conditions of release imposed by the Court would protect the public from another unprovoked attack.

### b. Thompson Remains a Significant Flight Risk

Despite being detained and under close watch by multiple law enforcement officers, Thompson nonetheless attempted to run away from the officers. If Thompson was willing to run while under close supervision, the Court should have little confidence that Thompson will voluntarily return for future court appearances. Further, Thompson has few ties to the community. Media reports indicate that Thompson was unhoused at the time of the incident, and the government is aware of no other current ties to this district. Given this, Thompson remains a significant risk of flight.

### c. The Weight of the Evidence Against Thompson Is Overwhelming

The evidence against Thompson is overwhelming. Thompson was not only identified by witnesses, but U-Haul records also indicate Thompson rented the truck, and videos taken by bystanders during the incident show that the driver was Thompson. Further, clothing recovered from Thompson at the hospital matches the distinct clothing worn by the U-Haul driver.

While the evidence of defendant's guilt is a less significant factor, it *remains* a factor for the Court to consider. Thompson is charged with a serious felony offense, and the evidence is overwhelming. The consequences to Thompson could be severe, which increases the risk of flight rather than facing prosecution.

### d. Thompson's History and Characteristics Indicate That Thompson is a Danger to the Community and a Flight Risk

Thompson's acknowledged severe mental health issues and the recent unprovoked violent conduct indicate that Thompson poses a danger to the community and is a flight risk. Further, the government is unaware of any current ties to the local community for Thompson.

## V. CONCLUSION

For the reasons set forth above, Thompson is a danger to the community and a flight risk. The government respectfully as the Court to reverse the Magistrate's release order and order the defendant detained pending trial.

DATED:   November 21, 2025                                  Respectfully submitted,

                                                            CRAIG H. MISSAKIAN
                                                            Acting United States Attorney

                                                            */s/ Jonah P. Ross*
                                                            JONAH P. ROSS
                                                            Assistant United States Attorney